2008 ME 141

**David R. GUY, Jr.**

v.

**Linda J. GUY.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 2, 2008.
Decided: Sept. 9, 2008.

Daniel R. Nelson, Esq., Stephen D. Nelson, Esq., Severson, Hand & Nelson, P.A., Houlton, ME, for Linda J. Guy.

Richard D. Violette, Jr., Esq., Brewer, ME, for David R. Guy.

Panel: SAUFLEY, C.J., and CLIFFORD, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Linda J. Guy appeals from an amended divorce judgment entered in the District Court (Millinocket, *Stitham, J.*) on David R. Guy Jr.'s complaint. Linda contends that the court erred when it characterized certain property as marital, and divided that property between her and David. Because we agree, in part, with Linda's contentions, we vacate the judgment and remand the matter to the District Court for further findings.

## I. BACKGROUND

[¶ 2] David and Linda Guy were married on June 28, 1997. They have two minor children. At the time of David and Linda's marriage, Linda was the sole owner of certain buildings in Indian Purchase # 3 Township, which were then located on leased land (the Smith Pond buildings). In January of 1998, subsequent to their marriage, Linda and David purchased in joint tenancy from Great Northern Paper, Inc. (GNP) the land on which the Smith Pond buildings were situated (the Smith Pond land). Shortly thereafter, in February of 1998, Linda and David jointly purchased from an abutting landowner an easement to benefit the Smith Pond land. Until the parties separated, the family used one of the Smith Pond buildings as their full-time marital residence.

[¶ 3] In January of 1998, and again in July of 1999, David and Linda mortgaged the Smith Pond land and buildings. The mortgage proceeds were used to purchase the land from GNP, and also to improve both the Smith Pond buildings and the Smith Pond land. They drilled a well and installed a pump, installed a septic tank and leach field, added a new concrete foundation to the home, installed metal roofing, put new siding on the home, replaced electrical wiring and a breaker panel, and landscaped the land. They used marital funds to make the mortgage payments.

[¶ 4] In July of 2006, David instituted divorce proceedings against Linda. David argued throughout the divorce proceedings that the Smith Pond buildings, as well as

its underlying land, constituted marital property. By amended judgment, the court granted the parties a divorce in July of 2007. The divorce judgment, which contains many provisions that the parties do not challenge in this appeal, characterized as marital all of the Smith Pond property, including the buildings as well as the land. The court valued the property at $151,000, and, given the mortgage indebtedness of $58,000, calculated $93,000 of marital equity in the property. The court awarded the property to Linda on the ground that she was the one to bring the buildings into the marriage, and to allow the children to remain in the only home they had ever known. The court also ordered Linda to pay David $46,500, half the equity in the property, as soon as the property is sold or foreclosed upon, or when the youngest child graduates from high school, but in any event no later than December 1, 2017. Linda filed this appeal.

## II. DISCUSSION

[¶ 5] Linda concedes that the Smith Pond *land* constitutes marital property because of her and David's purchase of it in joint tenancy during their marriage. She contends, however, that the court erred in concluding that the entire value of the Smith Pond *buildings*, including the marital home, constitutes marital property. "The determination as to whether property is marital or nonmarital is a question of fact" that we review for clear error. *Spooner v. Spooner*, 2004 ME 69, ¶ 7, 850 A.2d 354, 358. Any determination of what law is to be applied to those facts, however, is a question of law subject to de novo review. *Id.*

[¶ 6] Title 19–A M.R.S. § 953 (2007) governs the court's distribution of property in the context of divorce. It charges the court with "set[ting] apart to each spouse the spouse's property and … di-

vid[ing] the marital property in proportions the court considers just after considering all relevant factors." 19–A M.R.S. § 953(1). "[M]arital property" is generally defined as "all property acquired by either spouse subsequent to the marriage," regardless of whether title to that property is held individually or jointly. 19–A M.R.S. § 953(2), (3).

[¶ 7] There are several elements of value in the Smith Pond property. The parties agree that the value of the Smith Pond land, as well as the easement benefiting that land, constitute marital property because the parties jointly purchased both during the marriage. David and Linda also agree that the entire appreciation in value of the Smith Pond property during the marriage, including the land, buildings, and easement, is marital property because the parties used marital funds to make the improvements that caused such appreciation in value. *See* 19–A M.R.S. § 953(2)(E)(2); *see also Wooldridge v. Wooldridge*, 2002 ME 34, ¶ 7 n. 1, 791 A.2d 107, 109. At the time of the parties' marriage in 1997, the Smith Pond buildings were valued at $63,000. By the time of the divorce, the Smith Pond property, including all land, buildings, and improvements, contained equity in the amount of $93,000. Thus, there is no dispute that the total increase in value, roughly $30,000, is marital property.

[¶ 8] Linda's contention is that the court erred in determining that at the time of the divorce, the *entire* value of the Smith Pond buildings constituted marital property. Linda owned the buildings on the Smith Pond property prior to her marriage to David, and came into the marriage with those buildings, worth $63,000 at that time, as her own nonmarital property. The issue is whether subsequent acts by the parties operated to convert that portion of the value of the Smith Pond build-

ings to marital property. *See Wooldridge,* 2002 ME 34, ¶ 7, 791 A.2d at 109 ("Upon divorce, the court ordinarily distributes such nonmarital property to the spouse who acquired it before the marriage, unless by some action of the parties the property has become part of the marital estate.").

[¶ 9] In concluding that the buildings were marital, the District Court considered several facts, including that the parties treated the land and buildings as jointly held property; that they mortgaged the property twice; and that they used marital funds to make mortgage payments. The court also placed some reliance on the language of the deed from the original owner of the land, GNP, and the language of the easement. The GNP deed conveyed to Linda and David as joint tenants the Smith Pond land, but also purported to convey to Linda and David jointly "any and all improvements thereon," which the court interpreted to include the buildings already situated on the land.

[¶ 10] The court's reliance on the 1998 deed and on the easement deed are misplaced, however. Even though GNP *purported* to convey improvements to the land as well as the land itself, GNP had no ownership interest in the Smith Pond buildings. GNP could not have conveyed to *anyone,* including David, that which it did not own. Thus, the language of the deed in the parties' joint purchase of the Smith Pond land in 1998 did not operate to convert the Smith Pond buildings to marital property. The same applies to the deed conveying the easement to benefit the property conveyed to Linda and David as joint tenants, because the easement

owner had no interest in the Smith Pond buildings.

[¶ 11] Alternatively, David relies on the longstanding general rule of common law that "whatever is affixed to the realty is thereby made parcel thereof, and belongs to the owner of the soil." *Bonney v. Foss,* 62 Me. 248, 252 (1873); *see also Tibbetts v. Tibbetts,* 2000 ME 210, ¶ 10 n. 2, 762 A.2d 937, 940; *Sutton v. Frost,* 432 A.2d 1311, 1313 (Me.1981); *Kingsley v. McFarland,* 82 Me. 231, 233, 19 A. 442, 442 (1889). We agree with David that the property could be labeled marital property if the Smith Pond buildings are affixed to the land, and there is some evidence to indicate that the buildings may have been affixed. No findings were made by the court, however, as to whether some or all of the Smith Pond buildings became affixed to the Smith Pond land.

[¶ 12] There is also a well-recognized exception to this general rule. A building that is not *permanently* affixed to the land, but is instead a "removable fixture" may, in some circumstances, "remain the personal property of someone other than the owner of the land on which it stands."[1] *Sutton,* 432 A.2d at 1313.

[¶ 13] Although this general rule could apply to make the Smith Pond buildings part of the Smith Pond land, the exception could apply as well. The court, however, did not analyze the matter pursuant to this rule or exception pertaining to fixtures, and made no finding as to whether the buildings, at one time owned by Linda separate and distinct from the land, have remained removable fixtures or whether the improvements to the property completed during the marriage have resulted in the buildings becoming permanently af-

---

1. An additional exception, "if the owner of the soil expressly or impliedly agrees, a building of a permanent character can be held by another as personal property," *Tibbetts v. Tib-* *betts,* 2000 ME 210, ¶ 10 n. 2, 762 A.2d 937, 940 (quotation marks omitted), would not apply here because the court found that the parties treated the property as marital.

fixed to the land. Rather, the court relied to some extent on the deed from GNP to David and Linda as joint tenants, and on the easement deed, in reaching its conclusion that the Smith Pond buildings were converted from Linda's nonmarital property to David and Linda's marital property. We therefore vacate the judgment of the District Court to the extent that its finding that the Smith Pond buildings are marital property is based on the language of the GNP deed.

[¶ 14] We remand the matter to the District Court to determine whether the Smith Pond buildings have become affixed to the land, or were intended by the parties to become their joint property, and are thus marital property. We also note that, if the court determines the Smith Pond buildings to be entirely marital property, it should, as it properly did in its current judgment, consider Linda's contribution of the buildings to the marriage when it divides the marital property. *See* 19–A M.R.S. § 953(1)(A).

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.